case of the day nineteen six oh three four zero united states vs. smith mister alexander that's your pleasure whatever's been prearranged with the clerks office uh... this appeal uh... centers around the extension and escalation of a traffic stop in hernando mississippi following a police officer's uh... mistaken and immediately almost immediately dispelled belief the vehicle driven by mister corey smith bore no license plate or tags which is a misdemeanor crime in mississippi well you're not contesting the stop you're not contesting the stop are you you're contesting the length of the stop not contesting uh... i'm not disputing that the officer believed uh... legitimately believed that there was not a tag i guess uh... as far as you know he ultimately was proven incorrect there was a tag it may have been improperly displayed so not not contesting the actual stop may have been i distinctly remember you don't contest the stop in your brief go ahead yes your honor uh... well the crime it's a misdemeanor crime and it's punishable only by a fine not exceeding twenty five dollars so as far as the investigation that was to follow uh... one of the typical factors or common factors of traffic uh... crimes is that officers has a discretion whether or not to arrest or to cite or to issue a warning that's not present in this case so the uh... i guess the scope of the investigation would be just that much less and uh... the traffic stop occurred approximately five fifty seven p m you probably don't need to go into the facts you have multiple stages of fourth amendment right you have a stop which sounds like was a legitimate stop and then uh... as i understood the facts undisputed the officer brings the driver your client back to see where the tag is affixed and at that point there's discussion with driver and passenger and their inconsistent stories so i thought the issue before us was is there reasonable suspicion to extend the stop longer at which point crash the dog comes alerts and he has probable cause to go in the vehicle i thought your focus was that second moment there is no reasonable suspicion to deploy crash the dog that that is uh... i'm arguing that that was unreasonable as well but this is i guess uh... if we can nip the bud at this point as early as possible to find unreasonableness is what i'm trying to point out and i think that uh... there was uh... an unreasonable extension that occurred earlier the case uh... rodriguez versus united states uh... has references certain uh... incident to typical traffic stop uh... investigative measures such as running the driver's license drivers with a apostrophe s as opposed to no apostrophe or s apostrophe uh... drivers you know the investigations occurred into the passengers uh... they really did not let me just rephrase the question the district judge had a hearing the district judge heard the testimony of officer solomon and mister smith and it sounds like he credited mister solomon are you saying that his findings that solomon believed they had inconsistent stories is clear error or are you making a legal argument i'm making a legal argument that they extended the stop before that even occurred unreasonably uh... in the extension of uh... unreasonable extension occurred i understand that but they were stopped at five fifty seven i mean my timeline here which you can contradict if it's wrong is that from six oh four to six ten the officer inquired into the purpose of the trip uh... why were you going to you know why were you traveling north on on i-55 to memphis and and ask the passengers and there were conflicting stories do you agree with that there were conflicting stories given by the passengers about what they were doing i do agree with that your honor what did the driver say we're going to indiana to get a ice maker an ice maker and then the passengers uh... didn't know anything about it once they were going to memphis and one uh... we're going to a party in memphis and they were inconsistent stories so i mean doesn't that raise some suspicions for the officer when he hears that well but uh... before that but the identification insurance of mr smith were verified at six oh four p m okay they knew who he was as far as the legitimacy of his tag the reason for the stop that was completed at six oh four p m and at that point they looked into the now that statement i mentioned from rodriguez drivers license check with an apostrophe s drivers i think that that means the driver and his driver's license status not anyone's driver's license some people call it driver license some people call it driver's license i found in my research but i don't think that it anticipates searching into the background of the tied up in the facts and you can you never say anything about the fact that clearly erroneous but you know what what also prompted the officer's suspicion was that he stopped this man and the man says i'm going to indiana to pick up an ice maker and he says to him why on earth would you be driving all the way from texas where he was in texas to indiana to pick up an ice maker instead of just having it shipped to you it was just one suspicious comment after the next then he says well these the two men in my car i know them well and they're going to go help me and we're going and then the man said we only know this guy we're going to memphis for a party i mean it's just rife with inconsistencies so assuming arguendo there were inconsistencies that raised reasonable suspicion what is the proper course of action from that point forward we have a canine officer who that is the canine officer he didn't have to call for backup to bring in a canine unit he had it in his vehicle the whole time and there's about a ten minute delay at that point where he has launched his narcotics investigation where there's really no explanation for what's occurring well he's running those background checks and he finds there four drug warrants or something the uh... the testimony that came out on that topic was that that's something that's radioed in to dispatch and it's sort of a passive once it's called in it's sort of a passive behavior uh... just sit and wait for the results to come in it's not i don't think he's uh... on a keyboard looking things up actively during that time i took that as idle time that extended the stop beyond the length that a reasonably prudent officer would have he could have asked for corey smith's consent at the point where he launched that narcotics investigation but he didn't well i hear what you're saying but we we have the background checks on the passengers and in my time tell me if this is wrong six ten p m officer solemn is informed that carol one of the passengers has arrest warrants is that correct has a violation of probation warrant yes your honor he was taken into custody at that time so he's arrested he's arrested at six eleven or six twelve and that that occurred so seamlessly it's like it came up and then there was a sporting officer there who took him into custody and he was out of the picture it was the arrest warrant had nothing to do with uh... a crime that was uh... the subject of investigation as far as their backgrounds were concerned if you recall there were only four uh... prior narcotics arrest in some data back to the early eighties uh... it wasn't anything that stood out these were adult men it was a tuesday i mean a lot of people get nervous dealing with the police under the best of circumstances i've i've probably been guilty of i mean look at me standing here before you guys today it's just you know when you've got authority figures i understand your honor i apologize it is uh... it's a test of nerves to deal with authority figures and you know part of the difficulty here for me at least is if you don't file a reply brief it's not as clear to me what your central argument is i thought your argument wasn't what you seem to be conceding today which is that there were significant discrepancies as the district court found you're not pressing that those didn't give rise to reasonable suspicion you're arguing that prior to that there wasn't reasonable suspicion enough to allow him to question the various people yes your honor so your argument that's that's i want to be very careful though so you're acknowledging that the district court's finding that there were significant discrepancies in stories isn't one you're challenging factually i'm not gonna stand here and challenge that conclusion so then elaborate just a little bit more you're saying that once the officer did what the stop had to the stop he couldn't question further the uh... the list that's provided in rodriguez of the typically anticipated investigative measures that are incidental to typical traffic stop running the driver's license and uh... checking the registration checking the uh... status of the insurance all those things were completed at six oh four p m at that point the investigation continued i thought he asked the driver do you want to see where the they got out of the car to go look where the tag was because it was misplaced i have that as occurring at approximately six oh nine p m six oh four is when that invests the identification insurance were verified thereafter officer solomon requested identification from smith's passengers and then began to run it and that their identification was verified at six oh nine and then the officer's narrative uh... stated that at that point he continued the encounter by ordering them to exit the vehicle and submit to you know separate uh... conquer and divide questioning and i think that at six oh four p m if we're looking at that particular wrinkle in time where reason i think what is reasonable is well that that prompts a question i haven't to follow up on judge higginson i was also curious why you didn't file a reply brief unless maybe you did and it just didn't get to us did you file a reply brief i don't have one you know that is a good question i'm remembering uh... going through uh... the host of practice guides that were on the court's website and there was there was something that led me to believe that they weren't particularly helpful to the court or encouraged well just for your information and information for the students that are here i think it's most helpful brief you file but but uh... uh... going to my main question to you the issue you raise second issue you raise in your brief is that the delay from six eleven to six twenty one for the dog search was unreasonable and i'm just not sure how you raise that at the evidentiary how did you preserve that issue so that we don't review it for plain error the uh... uh... just to clarify you're asking did i raise specifically the delay in between the i think the only difference is i didn't concede outright that uh... that those that the inconsistencies were significant it may have occurred to me but i wasn't asked by the district judge no judge barcello is asking about the delay in deploying the canine yes that we have your argument as i understand it as well the dog is there it's not the normal case where we have to wait for the dog to arrive the dog's there but he's not deployed until six twenty one p.m. and and the question is did you raise that delay as a reason to attack the stop or to not to you know to unreasonably lengthen the investigation did you raise that i'm confident i did because i don't know if there's a distinction to be made between if you make the argument that the stop was unreasonably delayed uh... you know citing rodriguez and you know his progeny does it have to be alleged specifically that you know certain minute-by-minute well i think i think that we're the rule is as i understand it is it has to be brought to the attention of the district court so the district court can consider it and that's and that seems to be an important part of your argument that they should have deployed the dog earlier i'd raised it is really i i'd i'd debate the whole time whether or not raises a single uh... section of my brief within in the trial court i treated the dog sniff separately from the uh... just generalize extension and that's how uh... i'd certainly address the point which dog sniff was concerned and argued that was unreasonable let's assume that you raised it of course that would affect our standard of review but let's assume that you did what what is your argument ten minutes i guess it's about ten minutes or maybe eleven uh... ten uh... unreasonably lengthens the stop well you look at you look at the means uh... they're used to pursue the ends okay he's the officer is stated he is there to conduct a narcotics investigation in fact he entered that into the cad system uh... call-action details uh... that's his justification on the ncic as well for uh... his inquiry that's a six eleven six eleven and at six twelve uh... at that point officer solomon stated in no uncertain terms that he was working on a particular lies facts felt it was narcotics because of the interstate and because it was because of the inconsistencies which in his experience uh... related narcotics at that point uh... i don't believe a reasonable officer would have either deployed his dog if he believed he had grounds to do so or i think best practice would have been to ask mister smith if he would consent to a search well what did mister smith, didn't he ask mister smith he did but he didn't ask him what was mister smith's response mister smith uh... well he didn't uh... consent to the search but he waited he didn't wait he didn't ask him until right at six twenty six twenty one  you have rebuttal time thank you your honor mister mims thank you your honor your honor it's very clear that the this court is very familiar with the facts of this case so i don't want to spend a lot of time going into the details of the facts i would say that in review of the transcript it appears that the officer officer solomon removed uh... cory smith from the vehicle at the very beginning of the traffic stop he mentioned during his testimony he did it for three reasons he approached the passenger side of the vehicle and there were two other passengers in the vehicle besides the driver so he removed smith from the vehicle one for officer safety two because it's easier to hear and communicate with the driver when he pulls him out of the car instead of trying to talk across from the passenger side uh... to the driver sitting on the driver's side and three to show him the improperly displayed tag in the window and how hard it was to see through the dark tint so he does remove him from the car and engage in conversation with him at the very beginning of the stop and the issue in responding to mister alexander's argument about the traffic stop should have ended at 6 or 4 p.m. the issue is when he first talks to the driver smith and asks him questions about where he's going and the purpose of the trip which is certainly permissible under the presence of righam and pack smith gives him an illogical an illogical answer as to where he's going he talks about driving from fort worth to indiana to pick up an ice machine he's bought on craigslist he drives through jackson mississippi to get there which is not the most direct route he picks up two guys in jackson to help him on this trip which makes no sense that you would do that you would get somebody to help you load it in indiana and somebody to help you unload it in fort worth you wouldn't pick up help in jackson he says these guys have done work for him which doesn't make sense because he lives in texas and they live in mississippi but then he doesn't know one of these guys and as the court alluded to earlier that certainly raises red flags in solomon's mind because he starts asking him questions then about such as why do you need three guys to lift a normal size ice machine and wouldn't it be cheaper to have the machine shipped to texas instead of paying for gas and lodging to drive to indiana these are the questions that solomon is asking smith while he's waiting to get the dispatch to call him back regarding the status of the driver's license and he testifies solomon testifies he does not get good answers from smith on those questions so the red flags are going off that the story doesn't add up that then gives him the right to follow up and ask carter and carol the passengers about the purpose and itinerary of the trip and what he gets as the court has noted is significantly inconsistent statements uh... and that leads him gives him reasonable suspicion combined with the fact that he knows this is a a known drug trafficking corridor and while solomon doesn't use those magic words i have a question about that i'm a little concerned about the weight that we ought to put on known drug trafficking corridor because for example i drove up here on i-55 and so did my clerks and i'm fairly confident that i was not carrying any contraband nor were my clerks so it concerns me that i mean so you know what weight should we put on that fact it's a factor to consider certainly in and of itself does not give rise to reasonable suspicion in fact many of the factors that courts cite and there's cases that talk about inconsistent statements talk about the location of where a vehicle is a known drug trafficking corridor or somebody coming from mexico or miami or nervousness of the driver any of those factors in and of themselves do not give rise to reasonable suspicion it's the combination of those factors that you can consider so the government's position is inconsistent statements alone couldn't give rise to reasonable suspicion it has to be coupled with i think you do, i cannot find a case that specifically says there's no way that inconsistent statements alone, i can't find that case it's possible there's a case out there that says the district court implied that our law has gotten clearer, it's not clear to me that it's gotten clearer in other words it seems to depend on where the statement's inconsistency is significant and it's possible these passengers were actually saying yeah we're going to party in memphis but they were never asked and then will you be heading up to indiana no sir, i believe that they were asked about that, i believe that i could be wrong about this, but i thought that officer solomon had asked them what about indiana, what about an ice maker, and they said we know nothing about indiana or an ice maker well today he's conceded that they were significant discrepancies, that's what the district court found so we have a case where they're on interstate and the passengers and drivers have significant discrepancies in their stories i guess your argument is that fits into pack and brigham and our line of authority yes sir, it does so you're not relying on the warrant, the criminal history warrant for the passengers right, because the district court and the government didn't rely on that at the district court level i suppose we still could i believe that the warrant, i'm not sure you're talking about the 610 warrant on carol yes sir to me that explains part of the timing in this stop it does give him permission to prolong the stop because that's something that's come up in the natural course of the traffic investigation because brigham and pack say you can check the driver's license of the passengers and of course when a warrant comes up he has to deal with that warrant they have to arrest him, they have to put him in handcuffs, put him in this so it explains the length, but it doesn't add to the reasonable suspicion justifying the use of crash i don't believe that does just an arrest warrant by itself what i think does lead to reasonable suspicion is if you notice in the record and i failed to mention it in my brief but if you look at page 56 of the record there's a cad report and basically it's the officer's log from what happens at the stop and it talks about the initial stop at 657 and 46 seconds and it shows the positive NCIC on willie carol at 610 and 56 seconds that's when word comes back he has an arrest warrant at 611 it shows him switching his mind to a narcotics investigation and that's based upon the inconsistent statements that we talked about earlier at 612 he places the male in custody, that's willie carol that's when he actually puts him in officer dave's car right after that though at 612 and 56 seconds he requests a criminal history on all three at this point he's only asked for a driver's license check how is that different from the initial check on carol this is more in depth, could you explain that to me the initial check that he did was on the driver's license, is it valid is this a real license, is it fictitious, are there any outstanding warrants a criminal history being NCIC reports a little bit more detailed and that's when if you look at page 56 of the record at 618 pm he gets a positive criminal history on all three of course we know already that carol has a criminal history because he's got an arrest warrant but he finds out that mr smith also has criminal history and he finds out that the third passenger carter has a criminal history that includes four prior drug arrests including two for possession with intent to sell so that's further reasonable suspicion on the narcotics investigation that leads him then after 618 pm to ask mr smith for consent to search mr smith refuses consent and he then deploys his canine unit we have had probable cause without the canine i mean the problem might have the fourth and then an oddity here of course is that the dog then alerts but there is no drugs inside yes i guess the district judge explored that extensively at the history i can't cite you the case law on it but i know i've looked at this before and the case law is that even if you have what i would call a false positive that that still gives authority for the search from the standpoint that the drugs could have been hidden so well the officers couldn't find them or the dog's nose is so much better than everybody else's maybe the drugs have been used up and he still smells where drugs were there but the case law on that is clear that does not negate the search but that's the issue with the 10 minutes that opposing counsel wants to question between 611 to 621 he's now now he's moved into his narcotics investigation he's running a criminal history on these individuals rather than simply deploying the canine he's trying to develop more reasonable suspicion because we don't necessarily want officers just deploying their canine at every stop or every time they first suspect drugs we want them to go a little bit farther let's develop more reasonable suspicion before we simply delay the stop longer to run the canine unit one thing if i may i noticed that opposing counsel brought up the rodriguez case and i would like to point out under rodriguez the difference in rodriguez in this case in rodriguez the officer finished explaining the warning ticket to the driver and giving back the driver and the passenger their documents and the officer in rodriguez testified at the hearing that the reason for the stop was completed at that point then he asked for permission to walk the canine around the car and when the driver said no he went ahead and did it in that case it was clear the officer in his mind had completed the stop on the traffic issue and then was moving into a drug investigation the court in rodriguez held that without reasonable suspicion officer must allow the driver to depart once the purpose of the stop is conducted in other words you can't prolong and otherwise complete a stop to conduct a drug sniff absent reasonable suspicion in our case we already have that reasonable suspicion before he completes the purpose of the traffic investigation he's developed a reasonable suspicion based on these significantly inconsistent stories Mr. Mims, along the lines of my questioning counsel about whether he preserved the you waited too long to do the canine sniff his brief seems to focus more on on the fact that you shouldn't you should have done the canine sniff sooner you had the dog there you didn't have to wait on the dog how do you and in your brief you don't challenge that he failed to preserve that in district court so how do you consider that he properly preserved that issue in district court your honor in fairness to opposing counsel he did in his brief at the district court level he raised four grounds two of which would be relevant here one was he said you did not have reasonable suspicion to delay the traffic stop because the traffic stop ended at 6.04 so and so you didn't have you didn't have reasonable suspicion to get to 6.11 and then he said you didn't have reasonable suspicion to delay the narcotics investigation from 6.11 to 6.21 he did raise that the district court did he say specifically the problem with it is you had the dog there that's the point he he emphasizes as I recall from his brief here on appeal and again you don't challenge the fact that he didn't preserve this more discreet issue your honor he raised that at the district court level the district court essentially found that once you had reasonable suspicion to suspect narcotics that gave you reasonable suspicion for everything and the court really combined the two arguments into one decision so I believe he did raise that I just believe that we have the explanation for why we go from from point a to point b so how did he raise it in the record where he said you shouldn't have waited 10 minutes to do this dog sniff you had the dog there at 6.11 your honor as far as raising it here at this level I'm not certain that he has I just have not for my own purposes I've not addressed that as an issue that I'm I'm more focused on what happened on the stop and I believe well we of course determine our own standard of review but I it just seemed to me he was raising in his brief here an issue that wasn't raised in district court we'll check it carefully because if he didn't raise it again the review is only for plain error your honor as far as the case law what controls in this case I think the case law as far as how to conduct a stop fifth amendment analysis or fourth amendment analysis excuse me on these on these stops and these searches is well settled I think the question is just how do we apply the law to the facts this case in my opinion is controlled by the cases of Brigham and Pack which talk about the fact that you can check the licenses of the driver you can check the licenses of the passengers you can ask the driver about the purpose of the trip you can check with the passengers to see if the driver's telling the truth and you can ask all those questions um in investigating the initial traffic stop the last thing I want to point out I don't take a lot of I don't usually look a lot outside the fifth circuit if we have good fifth circuit case law but I did review the cases that opposing counsel cited in his brief one he brought up was U.S. versus Smith it was a case out of the sixth circuit um I noted in reading that case in that case that the sixth circuit court of appeals decided there was not reason enough reasonable suspicion based on the facts of that case that involved a driver who appeared nervous the passenger appeared to be stoned there was smell of body odor excessive food wrappers in the car and neither the driver nor the passenger were being were on the rental agreement at the time and in that case the officer believed those gave him reasonable suspicion to go farther what the court noted in that case was that those factors failed to establish reasonable suspicion to prolong the stop but the court said perhaps if officer Fulcher had fleshed out the details concerning the trip better or if he had developed some inconsistencies in their stories then he may have had some support in establishing a reasonable suspicion of criminal activity that's exactly what we have in this case this court found we had significantly inconsistent stories here coupled with the fact that as officer Solomon testified when people lie to me on I-55 it's usually because they're hiding drugs or hiding guns or other contraband that gives rise to reasonable suspicion to prolong the stop it was reasonable to run a criminal history on the on each of the individuals before running the drug dog and I don't believe there's any other further issues here I'm happy to answer any further questions the court may have otherwise I will surrender the rest of my time thank you thank you so returning to the cases of pack and its progeny I believe that that line of cases I legitimately believe that they stem from a improperly placed apostrophe as part of the initial investigation officer may examine drivers apostrophe s licenses so I'm reading that is you know a license is a license that is owned by a driver driver's license or driver license is a so examine drivers I think the language out of robbery is if I can grab just one moment your honor include so traffic stop typically includes checking the driver's license the the driver unless there's a two steering wheel car or something the driver's license and then pack states examining drivers licenses is the inference you're trying to draw from that that there was in it was it was not permitted to question the passengers I don't think that I don't think robbery as anticipates as far as the traffic mission stop is concerned examining passengers or other occupancies driver license driver's licenses. It's kind of a tongue twister but I think that it anticipates for the safe the traffic mission of the stop checking the driver's to see if he has a history of traffic infractions or outstanding warrants but how would the traffic function be advanced by checking a passenger's credentials he's not behind the wheel unless like I said there's a two steering wheel car or something in which case I think it would anticipate it I guess we just come back to the inconsistencies yes and I've also wanted to point out that the this this general area of the law is I think frustrating to many who encounter it because of the ability and it's potential for abuse by adding post hoc convenient facts when writing a report or asked to justify a stop that may not have occurred or likely did not occur or part of the what are the investigation what are the post hoc facts here in your view there was there was nothing in his write up about some of the facts that came out when pressed on the topic hearing for instance interstate fifty five is a known drug trafficking corridor I mean that that's just it's sort of as far as constitutional muster is concerned I mean it's so vague that's what if that's all there was I'd agree with you and I mean there's there's other things too that are not subject to cross examination that you know always seem to find their way into these descriptions like nervousness I mean it's unless there's a real good dash cam video or something it's gonna be hard to say that someone didn't perceive something being nervous as far as hard tangible facts that are subject to judicial review or post hoc reasonableness determinations I think that that's what any officer testified at the evidentiary hearing at the evidentiary hearing he testified he and Smith both testified Smith testified just in regard to the dog sweep and the alleged manipulation my only point is that the officer testified is subject to cross examination and I the judge can find incredible or not that that is that is the truth your honor but things like it's hard to tell someone without getting inside of their head which is difficult they didn't see or smell or perceive something and then these abstract facts or which are the other category that is concerning I mean if you if you think enough about something you you can come up with lots of the type of vehicle that they were in I find that vehicles painted a certain color or indicative of a certain gang that traffics narcotics for for instance just you know if you think enough about it you can add these things in I think it's subject to abuse and it I don't think it really is determinative of dispute time yes your honor okay thank you much the case is submitted we'll call the second case of the day 19